OPINION
Appellant, Tanya Hosler, appeals the judgments of the Court of Common Pleas of Hancock County, Juvenile Division, terminating her parental rights and responsibilities and granting permanent custody of Appellant's two children to Appellee, Hancock County Department of Human Services, Child Protective Services Unit (hereinafter "CPSU"). Although a separate case was filed on each child, the cases were consolidated for trial and have likewise been joined for purposes of the instant proceedings. For the reasons expressed in the following opinion, we affirm the judgments of the trial court.
Although they are quite young, Appellant's children, Robert Hosler, Jr., d.o.b. November 11, 1996, and Charles Nathan Hosler, d.o.b. April 3, 1998, have had a lengthy history with CPSU. CPSU's involvement in Robert's life began in August 1997, when the child was taken into emergency custody due to a lack of proper care. Specifically, Appellant was incarcerated at the time and could not find a suitable home for the child. The agency filed a complaint for dependency in conjunction with the request for emergency care. Thereafter, on September 26, 1997, the trial court adjudicated Robert a dependent child and ordered him placed in the temporary custody of CPSU. It should be noted that even though Appellant's ex-husband, Robert Hosler, is the presumed father because the two were married at the time of the child's birth, all parties apparently concede that he is not the child's biological father and paternity has not been established.
Meanwhile, during the term of Appellant's incarceration, the agency learned that Appellant was pregnant. She gave birth to Charles Nathan Robert Hosler on April 3, 1998. About a week after Charles' birth, CPSU filed a motion requesting the court to place the infant in its emergency care. Although Charles was residing with Appellant's ex-mother-in-law, CPSU considered her an inappropriate caretaker due to her own prior involvement with the agency. CPSU also filed a complaint for dependency in conjunction with the motion for emergency custody. It should also be noted that paternity has not been established for Charles.
On April 13, 1998, the court placed Charles in CPSU's emergency custody. Thereafter, on May 11, 1998, the court adjudicated Charles a dependent child and ordered the baby into the temporary custody of CPSU. Both children were successfully placed with the same foster family.
Although she has since been released from prison, Appellant has not been able to secure suitable or permanent housing and she has not complied with the terms of CPSU's case plan, which was initially implemented for purposes of reunification. As a result, CPSU filed a motion for permanent custody of the children on December 2, 1998. The court conducted a hearing on the matter in March 1999, and, after hearing all of the evidence, took the matter under advisement. While the court continued to deliberate the custody issue, the Guardian Ad Litem filed a report recommending that Robert and Charles be placed in CPSU's permanent custody. Thereafter, on April 5, 1999, the trial court granted CPSU permanent custody of Appellant's children. This appeal followed.
Appellant asserts the following as her first assignment of error:
 Children's Protective Services Unit failed to exercise reasonableness in developing a case plan and failed to make diligent efforts to provide services to the mother to complete the case plan.
 Appellant argues that CPSU failed to develop a reasonable case plan after her release from prison and failed to make a good faith, diligent effort to assist her in adequately complying with the terms of the plan so as to reach the goal of reunification. According to the rule of law set forth in In re Weaver (1992), 79 Ohio App.3d 59, 63-64:
 [A] good faith effort to implement a reunification plan means an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage. A lack of good faith effort is defined as importing a dishonest purpose, conscious wrongdoing or breach of a known duty based on some ulterior motive or ill will in the nature of fraud.
[Citations omitted.]
A thorough review of the record leads this court to conclude that CPSU made a good faith effort, not only in implementing a reasonable case plan, but also in its efforts to help Appellant complete the goals of the plan. More specifically, CPSU Case Worker, Amy Gillig, testified that the case plan emphasized several relevant objectives, including Appellant's need to secure a suitable permanent residence. The case plan also required Appellant to attempt to establish paternity of the two boys; obtain adequate parenting skills and participate in counseling to control responses to anger and stress.
Appellant asserts that these latter objectives were unreasonable, especially in light of the fact that Robert and Charles were initially placed into CPSU's custody solely because of Appellant's incarceration. We cannot agree. The record is clear that Appellant could not secure permanent housing for the boys while she was in prison and, likewise, she failed to maintain suitable housing once she was released. Moreover, parenting classes and counseling were certainly reasonable case plan requirements since the testimony reveals that many of Appellant's problems with housing stemmed from a personality disorder and her inability to maintain a safe, clean home. The record is also apparent that CPSU offered Appellant many services to assist her in reaching these objectives.
Nonetheless, Appellant argues that CPSU failed to make a good faith effort at reunification because the case plan did not emphasize practical goals or services such as employment training. While employment training may have been a worthwhile objective, we cannot conclude that the failure to provide Appellant with services to obtain a job rises to the level of bad faith. Furthermore, although R.C. 2151.412(E)(2) provides that any party may propose a change to the case plan, we must note that Appellant did not attempt to do so with respect to the stated goals or type of services offered.
Thus, because the record demonstrates that CPSU implemented a reasonable case plan and made a good faith, diligent effort to assist Appellant in complying with the various objectives, Appellant's first assignment of error is overruled.
Appellant asserts the following as her second assignment of error:
 No court should grant permanent custody to a public children's service agency unless that agency can prove by clear and convincing evidence that permanent custody is in the best interest of the children.
Although this statement is a proposition of law rather than an assignment of error, as required by App.R. 16(A)(3), in the interest of justice and because of the assertions specified in Appellant's brief, we will address the issue of whether the trial court erred in granting permanent custody to CPSU.
When determining the issue of whether to grant permanent custody to a public children's services agency, the trial court is guided by R.C. 2151.414(B), which provides, in relevant part:
 The court may grant permanent custody of a child to a movant if the court determines at the hearing * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
Accordingly, if the record demonstrates that the children have not been abandoned or orphaned, as in the case of Robert and Charles, the court must apply a two-pronged test to decide whether parental rights should be terminated. First, the court must consider the best interests of the children. Second, the court must make a determination as to whether the children cannot or should not be placed with the parents within a reasonable time. Our initial discussion will center on the issue of the best interest of Robert and Charles.
R.C. 2151.414(D) states:
 In determining the best interest of a child at a hearing held [on the matter of permanent custody] * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem * * *;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Further, R.C. 2151.414(B) requires the trial court's finding, with respect to the question of best interest, to be supported by clear and convincing evidence. "Clear and convincing evidence is that which will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established."In re Weaver (1992), 79 Ohio App.3d 59, 64, 606 N.E.2d 1011.
With respect to Appellant's relationship with Robert and Charles, we do not doubt that Appellant loves her children. However, this court has held that whether a mother and her children are fond of each other "has little bearing on * * * [the question of] small children's best interest, considering their extraordinary needs, nor is such a consideration paramount in the statutory scheme."In the Matter of Dix (June 9, 1992), Defiance App. No. 4-91-22, unreported.
Next, we must analyze the wishes of the children, as expressed by the court-appointed guardian ad litem, Joyce Kohli. The record demonstrates that Kohli filed a report and recommendation that was based on several interviews with Appellant. In concluding that CPSU should obtain permanent custody of Robert and Charles, Kohli stated that although Appellant seemed excited about the prospect of reunifying with her children, Appellant could not place her children's needs "at the forefront of her life", evidenced by the fact that she failed to follow through with any aspect of the case plan.
Third, we must examine the custodial history of Robert and Charles. The record is clear that CPSU has been involved in Robert's life since he was approximately nine months old and the agency took temporary custody of Charles within the first week of his life. The boys have both been adjudicated dependent and have been living together in foster care for more than a year.
Finally, the statute requires the consideration of the boys' need for a permanent home and whether that can be achieved without granting custody to CPSU. Dr. Carol Patrick, a clinical psychologist who conducted a custody evaluation in this case, stated that Appellant suffers from a significant personality disorder and a poor understanding of child development. Consequently, Dr. Patrick testified that Appellant would need intensive counseling before she could effectively parent her children. According to Dr. Patrick, Appellant's "current level of dysfunction appears to be potentially harmful to the welfare of young children in her care."
Based upon the foregoing, we conclude that the trial court's finding that it was in the best interest of the children to grant permanent custody to CPSU is supported by clear and convincing evidence.
We now turn our attention to the issue of whether the trial court erred in finding, by clear and convincing evidence, that Robert and Charles could not be placed with either parent within a reasonable amount of time.
R.C. 2151.414(E) provides a list of twelve factors that a court must consider in order to properly enter a finding that a child cannot be placed with either parent.
In the present case, the trial court found R.C. 2151.414(E)(1) applicable. This section of the statute provides:
 Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
As we stated previously, the problem that initially caused both Robert and Charles to be removed from Appellant's custody was the fact that she was incarcerated and could not provide a suitable home for her children. Even though Appellant is no longer incarcerated, the record is apparent that the problem of appropriate housing continues to persist. Amy Gillig testified that since Appellant's release from prison, sometime in April 1998, she has resided at a halfway house, a homeless shelter and approximately six different apartments in Allen County. Ms. Gillig testified that she had made home visits to each one of Appellant's residences and that they were not suitable for young children in that they were either dirty or dilapidated. Furthermore, despite the agency's efforts to educate Appellant on the importance of making a budget, paying rent on time, maintaining a permanent address, and keeping the residence clean and safe, Appellant could not successfully do so. Thus, we find that the trial court's determination that the children could not be placed with Appellant within a reasonable period of time was based upon clear and convincing evidence.
Appellant's second assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgments of the trial court are hereby affirmed.
Judgments affirmed.
 HADLEY and SHAW, JJ., concur.